. 7594

McCALLUM v. GRIER.

1. Pleadings—Striking Out Allegations.—Greater latitude is permitted in allegations in equity than in law cases. Here appellant has failed to satisfy this Court that refusal below to strike out . allegations of answer in equity was prejudicial.

2. Principal and Agent—Broker.—A principal may revoke the authority of his agent except where the authority is coupled with an interest. A third party cannot enforce against a principal a contract for sale of land made with his broker after revocation of the authority of the broker to sell, even though the purchaser did not then know of the revocation.

3. Ibid.—Trustee.—It is a violation of the duty of a brokerage company to sell to its president, lands entrusted to it for sale, and he cannot demand specific performance of such contract, which is voidable at the option of the principal.

Before Sease, J., Sumter, December, 1909.   Affirmed.

Action by J. L. McCallum against Kate B. Grier. Plaintiff appeals from Circuit decree.

*Mr. L. D. Jennings,* for appellant.

*Messrs. Lee & Moise,* contra.

June 28, 1910. The opinion of the Court was delivered by

MR. JUSTICE GARY. The facts are thus stated in the decree of his Honor, the Circuit Judge: "This action was brought for specific performance of an alleged contract of sale by McCallum Realty and Insurance Company, as agent of the defendant, through its secretary and manager, D. R. McCallum, Jr., to J. L. McCallum, the president of the company, the same bearing date September 12, 1907. And the Court is asked to require the defendant to specifically perform the alleged contract.

"The case was referred to the master upon all of the issues, and the master found that the contract was binding and should be enforced.

"This brings up the case upon all the evidence in the cause.

"The evidence shows that D. R. McCallum, Jr., acting for his company, requested the defendant to list her property for sale with his agency. She was about to leave the city of Sumter for the benefit of her health, was exceedingly feeble and in a nervous condition, and sent for the said D. R. McCallum, Jr., for the purpose of having her property insured in his company. After the insurance was arranged, the agent requested the defendant to allow him to list her property with the company for sale, which she did, claiming, however, to have signed a blank authority with nothing written thereon. The paper obtained at the time authorizing the sale of the property, is a printed form filled out

and witnessed by D. R. McCallum, Jr. He left no copy with the defendant.

"No sale was made in fact, until after the return of the defendant from Charleston. She left her home for Charleston on the 19th day of August, 1908, and returned about September 2d, at which time Mr. D. R. McCallum, Jr., called upon her in the interest of the plaintiff, and with instructions from the plaintiff 'to try and get her to take less than twelve hundred and fifty dollars,' and with instructions to offer less. His first offer was eleven hundred dollars, which the defendant declined. He then stated, 'I think I have about found a man who will give you twelve hundred.' The defendant declined the offer. Further negotiations were carried on by the agent of the company with the defendant, all resulting in a refusal of the defendant to make the sale.

"Without repeating all of the testimony, it is sufficient to say, that it appears therein that when the defendant returned to her home in September, that no sale of her property had been effected, and she declined to allow the McCallum Realty and Insurance Company to make the sale of the land referred to in the contract, except upon certain terms, which the company did not agree to; in consequence of which disagreement there was a clear abrogation of the authority to make the sale of the land, in accordance with the contract.

"It further appears from the testimony that the McCallum Realty and Insurance Company, acting through its secretary and manager, acted in a dual capacity, in undertaking to negotiate a sale with the president of the company, at a price less than that fixed by the defendant.

"It further appears from the testimony that the agent of the defendant undertook to bind the defendant to a sale of property referred to, to its own president, and this without disclosing the name of the purchaser to the seller."

The first of the appellant's exceptions raises a question of practice, and is as follows: "It is respectfully submitted, that his Honor erred in overruling plaintiff's exceptions to the master's report, and in not holding that the Master should have sustained the plaintiff's motion to strike ·from the answer all of the allegations referred to in the plaintiff's motion to strike out, all of which are referred to in this exception and made a part hereof, and it is respectfully submitted, that his Honor erred in not sustaining the motion on each and every ground therein stated."

In the first place, the cases of *Jumper* v. *Bank,* 39 S. C., 296, 17 S. E., 980; *Holtzclaw* v. *Green,* 45 S. C., 294, 23 S. E., 515, and *Tucker* v. *Ry.,* 51 S. C., 306, 28 S. E., 943, show that the exception is not in proper form, as it does not contain within itself the proposition of law to be reviewed. But, waiving such objection, it cannot be sustained for the reason that the appellant has failed to satisfy this Court that the ruling of the presiding Judge was prejudicial to his rights. It must be remembered that greater latitude is allowed in stating the issues in equitable, than in legal actions. *Smith* v. *Smith,* 50 S. C., 54, 27 S. E., 545.

The appellant filed exceptions to the findings of fact hereinbefore set out, but these exceptions must be overruled, as the findings of fact are fully sustained, not only by the testimony introduced in behalf of the defendant, but by the testimony of D. R. McCallum, Jr., a witness for the plaintiff.

The next question that will be considered is, whether the defendant had the power to revoke the authority of her agent, during the time fixed for the continuance of her contract with the agent.

"As between principal and agent, authority is revocable at any time, if not coupled with an interest. The authority of an agent to represent the principal depends upon the will

and license of the latter. It is the act of the principal which creates the authority; it is for his benefit and to subserve his purposes, that it is called into being; and unless the agent has acquired with the authority, an interest in the subject matter, it is in the principal's interest alone, that the authority is to be exercised. The agent, obviously, except in the instance mentioned, can have no right to insist upon a further execution of the authority, if the principal himself desires it to terminate. It is the general rule of law, therefore, that as between the agent and his principal, the authority of the agent may be revoked by the principal at his will at any time, and with or without good reason therefor, except in those cases where the authority is coupled with sufficient interest in the agent. And this is true, even though the authority be in express terms, declared to be 'exclusive' or 'irrevocable.' But although the principal has the *power* thus to revoke the authority, he may subject himself to a claim for damages if he exercises it, contrary to his express or implied agreement in the matter. An agency is sometimes said to be irrevocable when it is conferred for a valuable consideration. It is believed, however, that this is only another form of stating the general rule that it must be coupled with an interest." Mechem on Agency, sec. 204.

"A power of attorney constituting a mere agency, is always revocable. It is only when coupled with an interest in the thing itself, or the estate which is the subject of the power, it is deemed to be irrevocable, as where it is a security for money advanced, or is to be used as a means of effectuating a purpose necessary to protect the rights of the agent or others. A mere power, like a will, is in its very nature revocable when it concerns the interest of the principal alone, and in such case, even an express declaration of irrevocability will not prevent revocation. An interest in the proceeds, to arise as mere compensation, for the service of executing the power, will not make the power irrevocable. Therefore, it has been held that a mere employ-

ment to transact the business of the principal, is not irrevocable without an express covenant founded on sufficient consideration, notwithstanding the compensation of the agent is to result from the business to be performed, and to be measured by its extent.  In order to make an agreement for irrevocability contained in a power to transact business for the benefit of the principal, binding on him, there must be a consideration for it, independent of the compensation to be rendered for the services to be performed." *Blackstone* v. *Buttermore,* 3 Pa. St. Rep., 266.

"It is not denied by the plaintiff that, in this case, it was within the power of the defendant to put an end to his agency, by revoking his authority.  Indeed, this is a doctrine, so consonant with justice and common sense, that it requires no reasoning to prove it.  But he contends that it is a maxim of common law that every instrumentality must be revoked by one of equal dignity.  It is true an instrument under seal, can not be released or discharged by an instrument not under seal or by parol, but we do not consider the rule as applicable to the revocation of powers of attorney. The authority of an agent is conferred at the mere will of the principal, and is to be executed for his benefit; the principal, therefore, has the right to put an end to the agency when the confidence at first reposed in him is withdrawn." *Brookshire* v. *Brookshire,* 8 Iredell (N. C.), 74.

As a broker is a special agent, a third party deals with him at his peril.  Therefore, after the defendant revoked the authority of her agent, D. W. McCallum, Jr., could not enter into a contract binding on her for the sale of the land, even though the plaintiff was not then aware that the agent's authority had been revoked.

The foregoing authorities dispose of all the exceptions relative to the power of revocation.

The next question is, whether the relations existing between the defendant, the plaintiff, McCallum Realty and

Insurance Company, and D. R. McCallum, Jr., were such as to prevent the latter from entering into a contract with J. L. McCallum for the sale of land that would be binding upon the defendant against her wishes.

The McCallum Realty and Insurance Co. was the agent of Mrs. Grier, and of course J. L. McCallum, its president, and D. R. McCallum, Jr., its manager, also sustained towards her a fiduciary relation, yet we find that one fiduciary (J. L. McCallum) not only seeks to purchase the property from the other fiduciary (D. R. McCallum, Jr.,) but that the plaintiff constituted the D. R. McCallum, Jr., his agent, to negotiate the purchase of the property from the defendant, although her interests were antagonistic to those of the plaintiff.

"A broker can not act as the agent of both parties, where their interests are conflicting. Thus a broker employed to sell, can not act at the same time as the agent of the purchaser, for in that case, the duty he owes to one principal to sell for the best price obtainable, is essentially inconsistent with, and repugnant to, the duty he owes to the other, to buy at the lowest price possible, and there would necessarily be danger that the right of one principal would be sacrificed to promote the interests of the other.

"A broker employed to sell goods for his principal, can not buy them for himself, nor can a broker employed to buy, buy his own goods, unless the principal, with full knowledge of the facts, assents to the transaction. This rule is inflexible, and it is immaterial that the broker acts in good faith, and works no injury to his principal, or even that the transaction is more advantageous to the principal than if had with a stranger.

"The reason of the rule is, that if the broker were permitted to buy from or sell to himself, there would be combined in him the incompatible relation of purchaser and seller, and an interest adverse to that of his principal

would be created, such as would ordinarily lead to a violation of his duty as agent." 4 Enc. of Law, 966; 19 Cyc., 207.

"It is a well established principle that a trustee can not buy at his own sale. He can not be the vendor and vendee at the same time of trust property; that is, he can not make a binding contract with himself in the purchase of the trust property under his control. On the contrary, all such purchases are subject to be vacated and set aside by the *cestui que trust* at his option, and this, too, without regard to the fact whether said purchase was made in good faith, at full price, or was fraudulent and delusive. This doctrine has been long settled, both in England and in this country, and it is a wise and wholesome principle. It strikes at once at the root of danger, and destroys it. It removes from the trustee the temptation to do wrong, and guarantees the faithful execution of his trust in the sale of the property of his *cestui que trust*."

This language is quoted with approval in *Mortgage Co.* v. *Clowney,* 70 S. C., 229, 49 S. E., 569. See also *Verner* v. *Simpson,* 68 S. C., 459, 47 S. E., 729, and *Duncan* v. *City Council,* 60 S. C., 558, 39 S. E., 265.

These authorities conclusively show that it was a violation of the plaintiff's duty to attempt to purchase from an agency of which he was a member, and that he is not in a position to demand specific performance of his contract, which was voidable at the option of the defendant.

Judgment affirmed.