[Civ. No. 1794. Third Appellate District.—January 26, 1918.]

## CARL A. NELSON et al., Appellants, v. B. F. COLTON et al., Respondents.

VENDOR AND VENDEE—SHORTAGE IN ACREAGE — INSUFFICIENCY OF EVIDENCE.—In this action to secure an abatement of the purchase price of land on the ground of alleged misrepresentations as to acreage, it is held that the evidence sufficiently sustains the findings that the sale was made without regard to acreage and that the grantees did not rely upon any statement in that regard.

APPEAL—FINDINGS—REVIEW.—Where findings derive support from evidence which is not upon its face unbelievable, the facts found must be accepted by a reviewing court as having been proved.

STATUTE OF FRAUDS—AUTHORITY OF AGENT—VENDEE NOT CONCERNED.— In such an action, the vendee cannot contend that the sale was void for the reason that the agent's authority was not in writing, since that matter concerns only the vendor and agent.

DEED—DELIVERY TO UNAUTHORIZED AGENT—ACTION FOR REDUCTION IN PRICE—RATIFICATION.—Where a vendee sues to reduce the price of land on account of shortage in acreage, he thereby ratifies any unauthorized act of another in accepting and recording the deed for him.

APPEAL from a judgment of the Superior Court of Sacramento County.    Peter J. Shields, Judge.

The facts are stated in the opinion of the court.

C. A. S. Frost, Francis V. Keesling, S. Luke Howe, and Downey, Pullen & Downey, for Appellants.

Fred J. Harris, O. G. Hopkins, and Thomas B. Leeper, for Respondents.

HART, J.—This is an appeal by the plaintiffs from a judgment rendered and entered against them and in favor of the defendants.

The controversy leading to the action arose over a sale of a tract of land in Sacramento County by the defendants to the plaintiff, Carl A. Nelson.    The claim of the plaintiffs is that, in the negotiations resulting in the sale, the defendant, B. F. Colton, falsely represented to the plaintiffs that the land in question embraced at least 263 acres, a survey of the land after the sale having disclosed that the tract sold contains 240.52 acres only.

The purchase price of the property sold was forty thousand dollars, and the principal object of the action is to secure an abatement of the purchase price ''in the sum of $152 for each acre of shortage in the quantity of said land less than 263 acres,'' to secure a reformation of the promissory note given by the plaintiffs to the defendants for the balance of the purchase price of the land and the trust deed given by the plaintiffs to secure the payment of said note, and to enjoin the defendants from selling or offering for sale the real property described in said trust deed for the purpose of satisfying said note.

The complaint charges that, before the sale was consummated and while the plaintiff was negotiating for the purchase of the land, the defendant, B. F. Colton, for the purpose of inducing the said plaintiff to purchase said tract of land, represented to said plaintiff that said tract contained 275 acres; that ''thereafter, and at the time of the delivery of the deed hereinafter mentioned, defendant, Colton, represented to plaintiffs that said tract actually contained about 263 acres, instead of 275 acres, as he had theretofore stated.'' It is further alleged: ''Said statement was made for the pur-

pose of deceiving plaintiffs and of thereby inducing plaintiffs to purchase said tract, and did deceive and did thereby induce plaintiffs to purchase it. Plaintiffs thereupon purchased said tract, relying upon said representation and believing it to be true and that said tract did contain about two hundred and sixty-three (263) acres.''

It is alleged that said tract of land never at any time contained 263 acres or more than 240.52 acres, and that, when representing to the plaintiffs that the said tract contained 263 acres, the said defendant, Colton, ''well knew said statement to be untrue and that said tract of land did not contain more than two hundred and forty and 52/100 (240.52) acres.''

The complaint further alleges that the actual value of said tract as well as the value thereof agreed upon by the plaintiffs and the defendant, Colton, at the time of said sale, was $152.09 per acre.

The defendants, replying to the complaint, admit and deny certain of the averments of said pleading, and then set up the following affirmative defense: ''That plaintiffs bought said land as a tract; that quantity was not a material consideration or part of said transaction; that defendants viewed said tract of land several times and walked over and upon the same several times; that defendant Colton correctly pointed out the boundaries of said tract to plaintiffs; that plaintiffs had full knowledge of the boundaries of said tract and full knowledge of the size of said tract; that plaintiffs had as good an opportunity as did defendant Colton to learn the exact acreage in said tract; that plaintiffs did not buy said tract by the acre, but bought the same as a tract, as it was inclosed by its boundaries; that the agreed price of said tract of land was forty thousand dollars ($40,000.00) for the tract as a whole; that plaintiffs bought said tract as they saw it; that they relied upon their own observation and did not rely upon any representation made by defendant Colton as to the number of acres in said tract.''

The findings, briefly, are: That it was not a part of the agreement of sale that the purchase price of forty thousand dollars was to be based upon the number of acres embraced in the tract sold; that said Colton informed the plaintiffs that it would take forty thousand dollars to buy said place, regardless of the number of acres in said tract, and that he

informed the plaintiffs that he would not take any less amount than forty thousand dollars for said tract; that said tract was bought and sold as a tract and as an entirety and not by the acre; that the buyer of said land was upon the same and the boundaries thereof were correctly pointed out to said buyer on three different dates prior to said sale; that the said parties never agreed that the purchase price of said land should be $152.09 per acre, or for any price per acre; that the description contained in the deed to said property is the correct description of said land, the boundaries of said land being correctly set forth and described therein, and that the plaintiffs received from said sale "and now are in the possession of all the land that defendant Colton sold to plaintiffs"; that, prior to making the contract of sale, plaintiffs informed one Thomas Jenkins that they were about to purchase said land for forty thousand dollars, and asked said Jenkins if in his opinion said place was worth that sum, and whether he would advise them to pay said sum therefor, and that said Jenkins thereupon informed plaintiffs that said place was worth forty thousand dollars, and advised plaintiffs to pay said sum therefor; that plaintiffs relied upon the advice so given by said Jenkins and acted thereon; that the defendant Colton made no fraudulent representations to plaintiffs, nor were plaintiffs influenced to purchase the tract by reason of any fraudulent representations made to them by said Colton; that plaintiffs, upon learning of the shortage of acres in said tract, did not offer to rescind said contract and restore the same to said Colton, nor have they at any time since learning of such shortage in the number of acres in said tract offered to rescind or offered to restore said land to said Colton.

The judgment is assailed solely upon the ground that the findings do not derive sufficient support from the evidence.

The facts are: That, in the month of September, 1913, one A. J. Crawford, a real estate dealer in the city of San Francisco, having previously been informed that the defendant Colton desired to sell his farm—the land in question —went to said farm for the purpose of seeing and interviewing Colton with the view of securing a contract with him authorizing him (Crawford) to sell the land. Crawford on that occasion met Colton and his wife, apprised them of the purpose of his visit, and proposed to them the agreement

referred to. Colton said to Crawford that sometimes he felt that he would like to sell the place and at other times he did not feel so disposed. After considerable negotiation, however, Colton, on the thirty-first day of December, 1913, gave Craw-- ford verbal authority to sell the place, together with the im- provements and the personal property on the farm for the sum of forty thousand dollars. Crawford, having known the plaintiff, Carl A. Nelson, for about a year before the au- thority to sell the Colton place was given him, and knowing that Nelson desired to purchase some farming land, called on the latter and submitted the Colton proposition to him. Crawford and Nelson visited and inspected the land in ques- tion on three different occasions prior to the fifteenth day of January, 1914. Crawford, testifying as a witness for the plaintiffs, said: "Mr. Nelson asked me, I think, on two dif- ferent occasions when I was out on the ranch, if I thought there were 275 acres in that tract; I told him I did not know, I presumed so, somewhere near it; the man that lived there ought to know about the acreage that he had. I did not know; I could not tell you what was there—did not make any difference, acreage, the acres; I was selling the place for forty thousand dollars and some horses and implements." Craw- ford said that the first time he visited the land with Carl A. Nelson he pointed out to the latter the boundaries of the land. "I showed him where the land lay and the fences around it. . . . We next visited the land on the 11th [of January, 1914]. At that time Mrs. Nelson and my wife accompanied us. Mr. Nelson and I walked out in the field around the barn, barn- yard and around the buildings. . . . I think Mr. Nelson asked me if I thought there were 275 acres in the place. I told him I thought there were. I stated the place had not been sur- veyed; I had no means of knowing. Mr. Nelson said he guessed there was enough land there. I told him it didn't make any difference as to the number of acres—that it took forty thousand dollars to buy the property. I told Mr. Nelson Mr. Colton thought there were 275 acres in the place, but that it had not been surveyed, but that it did not make any material difference as to the acres, that the price was forty thousand dollars just as it was, with the improve- ments."

On the fourteenth day of January, 1914, Carl A. Nelson informed Crawford that he would take the land on the terms stated, and, on the following morning, he and Crawford left

San Francisco for Sacramento for the purpose of completing the deal. Arriving at the latter place, Nelson and his wife executed and delivered to Crawford a written agreement of purchase and at the same time made to Crawford a payment of one thousand dollars of the first or cash payment which was to be made upon the execution of the deed.

Crawford further testified: "When we were there [Sacramento] Mr. Nelson called up Tom Jenkins, who at that time was supervisor there, asked him if he knew the Colton ranch. I was at the Land Hotel at the time he called him up. Mr. Jenkins told Mr. Nelson he knew the place. Mr. Nelson asked Mr. Jenkins what he thought about the place and Mr. Jenkins told Mr. Nelson it was a good ranch. Mr. Nelson told him he was thinking about taking it and was going to pay forty thousand' dollars for it and wanted to know if Mr. Jenkins thought it was worth that. As I understood, he said that it was. Mr. Nelson told me he said so, and as near as I can understand the phone."

It appeared that Attorney Busick, of Sacramento, was the attorney of the defendant, Colton. After the conversation over the telephone between Nelson and Jenkins, above narrated, Crawford and Nelson went to Busick's office. Nelson had urgent business in San Francisco and was required to leave for that city that day, and he left the matter, so far as he was concerned, to be attended to by Judge Busick, saying to the latter that "he could take care of his business, too," and at the same time paying the attorney a fee. Thereafter, Judge Busick drew up the deed from Colton and his wife to the Nelsons and a trust deed from the latter and his wife to the defendants, Harris and Hopkins, as trustees, to secure the payment of the unpaid balance of the purchase price of the land in question. These instruments were recorded in the office of the county recorder of Sacramento County on the twenty-second day of January, 1914, at the request of the said Busick, the balance of the first payment (eight thousand dollars) having been paid by Nelson to Judge Busick.

The defendant, Colton, testified that he first met Crawford about the twenty-eighth day of December, 1913, at his farm. Crawford called to ask whether he desired to sell the farm and Colton replied in the affirmative. Colton then told Crawford that the land had never been surveyed, but that he was of the opinion that it contained from 263 to 275 acres. Colton then made an oral agreement with Crawford

whereby the latter was given authority to sell the farm as it stood—improvements and certain personal property—for the sum of forty thousand dollars. For his services in making the sale, Crawford's commission was to be governed by the number of acres in the tract, to be later ascertained by a survey thereof.

Colton testified that he met Carl A. Nelson, for the first time, at the land in question, on one of the early days of the month of January, 1914. At that time he told Nelson that he did not know precisely how many acres the tract contained, but that he believed it embraced from 263 to 275 acres. He then pointed out the boundaries of the land to Nelson. He further testified that the land was originally bought by himself and brother, and the same jointly conveyed to them, the deed reciting that the tract contained 269 acres. He said, though, that the land had always been assessed as a tract containing 263 acres and that he had always paid the taxes on that number of acres.

Mrs. Colton, wife of the defendant of that name, testified to the payment by Nelson of the sum of seven thousand dollars to her husband upon the execution of the deeds referred to above, said sum being the balance due on the first payment. She also testified that Attorney Busick prepared the deeds, that she and her husband executed the one conveying the land to Nelson, and that she delivered said deed to said Busick, with instructions that he deliver the same to Nelson.

The plaintiff, Carl Nelson, said that, prior to the purchase, Crawford had told him that there were about 275 acres in the tract; that, subsequently, Crawford told him that a survey of the land had been made and it was found to contain only 263 acres. The witness said that, in making the deal, he figured on the basis of 263 acres. He said that Colton had told him that he had paid taxes on 263 acres.

The deed from the Coltons to Nelson recited that the tract contained "two hundred and sixty-three (263) acres, more or less."

The agreement between Colton and Crawford as to the latter's compensation for negotiating the sale of the land was to be whatever he could get for the land in excess of $135.50 per acre. In other words, Colton wanted to net that sum per acre on the sale. On the eighteenth day of January, and after Nelson had agreed to buy the land and had made

a payment of one thousand dollars on the bargain, as evidence of good faith, Colton had the land surveyed for the purpose of ascertaining the exact number of acres it contained and thus arrive at the amount of Crawford's compensation. The survey was made and thus it was ascertained that there were in the tract 240.52 acres only. Not satisfied with the first survey, Colton caused the land to be resurveyed, the result as to the number of acres being approximately the same. Colton testified that he expected to receive something like thirty-seven thousand dollars net for the land, and that, being greatly disappointed over the result of the survey and the amount he was to receive beyond the compensation to be paid to Crawford, he told both the latter and Nelson that he ''wanted to back out of the thing—that I would give one hundred dollars and back out.''

The foregoing involves a statement, substantially, of all the testimony, and it must be plainly manifest therefrom that the court was warranted in finding, as it did find, that at no time, until the survey of the tract was made at the instance of Colton himself, as above shown, did the latter know precisely how many acres the tract contained; that, until such survey, he was of the opinion that it contained at least 263 acres. That Colton honestly believed that the tract contained more than the number of acres that the survey disclosed is shown not only by the fact that he had always paid taxes on the basis of 263 acres, but also by the fact that he was so disappointed in the shortage of acres as so disclosed that he offered to pay Crawford and Nelson one hundred dollars to rescind the agreement of sale. It does not appear that Nelson concerned himself sufficiently about the number of acres in the tract before the sale to ask for a survey of the land. Colton had expressed to him the opinion, he testified, that there were about 275 acres in the tract; but he was willing to assume that it embraced only 263 acres, presumably because Colton had told him that on that number of acres he had paid taxes. So far as this transaction is concerned, it does not appear that he intended to take steps necessary to the ascertainment of the precise quantity of land in the tract, and it is probable that no controversy would ever have arisen upon that point had Colton himself not caused a survey to be made. As to the good faith of Colton, it is to be observed that it is hardly reasonable to suppose that, had

he known or had reason to believe that the tract contained less than 263 acres, he would have entered into an agreement with Crawford with respect to the latter's compensation for effecting a sale which would have necessitated a survey of the land to ascertain its precise quantity. Indeed, that Colton himself must have been, as he declared, greatly surprised and disappointed when he learned that the actual quantity of land in the tract had fallen far short of what he believed it to be, is well supported by the consideration that the shortage resulted in a corresponding reduction of the amount that he expected to net on the sale. It made several thousands of dollars difference to him.

But we may cast aside further consideration of the allegations and claim of fraud in Colton's representation as to the number of acres in the tract as wholly immaterial, for there is, as we have shown, evidence sufficient to support the finding that the land and certain personal property thereon were sold without regard to the number of acres in the tract. The plaintiffs' own witness, Crawford, so testified and his testimony upon that proposition was corroborated by that of Colton. The fact, therefore, if it was a fact, that Colton did not reveal to Nelson the result of the survey of the land made after the contract of purchase was entered into by Nelson, and the further fact that Colton received a payment on the purchase price with knowledge of the shortage of acres, as shown by such survey, are of no material consequence in this controversy. And, for the same reason, it is of no material importance that the land is described in the deed of the Coltons by metes and bounds and as containing "263 acres, more or less." In other words, in view of the finding (upon sufficient evidence, as we have seen) that "it was no part of said contract or agreement that said purchase price of forty thousand dollars was to be based upon the fact that there were about 263 acres in said tract," and that "defendant Colton informed plaintiffs that it would take forty thousand dollars to buy said place, regardless of the number of acres in said tract," the fact that the acreage was found upon a survey of the tract to be less than the parties believed when the sale was made, and the further fact that the deed from the Coltons to the plaintiffs described the land as containing more acreage than it actually embodied, present considerations which can justly exert no

influence on the decision of this case. This court cannot repudiate findings educed from evidence sufficient to warrant or support them. To the contrary, where findings derive support from evidence which is not upon its face unbelievable, the facts found must be accepted by a reviewing court as having been proved. In this case, therefore, there being nothing inherently improbable in the testimony upon which the findings are evidently founded, the facts found must be accepted as the established facts of the controversy. This is only the statement of an obvious and elementary rule of law. The result is that we are required to accept it as the established fact in this case that the contract of sale and purchase was not based upon the number of acres in the tract, but that the agreement was that the land was to be sold, and was so sold, to Nelson for the sum of forty thousand dollars as an entirety or without regard to the number of acres that it contained.

It follows that the authorities cited by learned counsel for the plaintiffs upon the question of the alleged fraud and misrepresentations of the defendant, Colton, as to the quantity of land of which the tract consists and upon the proposition that, from the fact that the tract is farm land the presumption follows that "acreage is material," have no application to this case.

The point is made that the sale was void for the reason that Crawford's authority to sell the land was not in writing, as required in such cases by section 1624, subdivision 5, of the Civil Code. In its application to this case, there is clearly no force in the point. Whether Crawford was legally authorized to make a binding contract for the sale of the land was a matter entirely between him and Colton, the owner of the land. The latter has not questioned Crawford's authority or act in that regard. On the contrary, he ratified all that Crawford did under his verbal authority by conveying the land to Nelson. Moreover, the act of Nelson in agreeing to purchase and in purchasing the land very obviously showed that he then had no objection, or reason to make any, to Crawford's alleged want of legal authority to make the sale, even if he were in any position to make a valid objection thereto.

It is next urged that Judge Busick was without authority to accept delivery of the Colton deed for the plaintiffs, and

it is hence argued that there never was a delivery of said deed and, therefore, there was no legal conveyance of the land to the Nelsons.

Carl A. Nelson, it will be remembered, called at Busick's law offices with Crawford, knowing that Busick was to represent the Coltons in the transaction, and employed the lawyer to attend to his part of the transaction. Precisely how far Busick's authority to act for the plaintiffs in the transaction extended, the testimony does not show. Nor is it important that the limit of Busick's authority should be shown, so far as the present point is concerned. Mrs. Colton, one of the grantors, testified that after she and her husband had signed and acknowledged their deed to the Nelsons, she left the instrument with Judge Busick to hand over to Mr. Nelson and that she instructed him so to deliver it. This amounted to a delivery, so far as the grantors were concerned, and, although not necessarily bound by Busick's act in accepting delivery of the deed if they did not authorize him to do so, and did not desire to be so bound, the Nelsons, as they appeared to have done, could, nevertheless, treat Busick as their trustee, in which case full title would pass to the Nelsons the moment of the delivery to Busick. (*Bury* v. *Young,* 98 Cal. 451, [35 Am. St. Rep. 186, 33 Pac. 338].; *Wittenbrock* v. *Cass,* 110 Cal. 1, [42 Pac. 300] ; *Crozer* v. *White,* 9 Cal. App. 612, 621, [100 Pac. 130].) But it seems to be the position of the appellants that, because Busick, in the place of immediately making a physical delivery of the instrument to the Nelsons, first caused the deed, with the deed of trust by the Nelsons to secure the payment of the unpaid balance on the purchase price, to be filed for recordation in the office of the county recorder, there was not a delivery to the Nelsons. But the point, even if under other conceivable circumstances tenable, is without force in its application to this case. The Nelsons do not claim in this action that they did not acquire title to the land in a valid way or that the title thereto is not in them. To the contrary, the very theory of this action here is that they are the owners of the land and presupposes that the conveyance by which title was vested in them conformed to the law as to all the formal and other requisites of a conveyance of real property. Moreover, assuming that Busick was not authorized to bind them by his act of accepting delivery of the deed and was not authorized

to cause it to be recorded before delivering it into their physical possession, and that there was for those reasons, or either of them, no delivery either in fact or in law, still the fact remains that the Nelsons did accept title to the land and thereby ratified every unauthorized act of Busick in connection with the transaction, so far as they were concerned therein.

There are some other points made and many cases cited on all the points discussed in the briefs, but the findings which have herein been specially considered are so well buttressed by the evidence and so clearly decisive of the case in favor of the defendants that it is deemed entirely unnecessary to consider the points not already noticed or to examine herein the cases referred to.

The judgment is affirmed.

Chipman, P. J., and Burnett, J., concurred.