[Civ. No. 5904. First Appellate District, Division One.—February 19, 1929.]

C. V. FIRESTONE, Respondent, v. KENNETH B. O'BRIEN et al., Appellants.

Keyes & Erskine for Appellants.

Sherman & Peters for Respondent.

NEEDHAM, J., *pro tem.*—The salient points alleged by plaintiff in his complaint are that he listed real estate with the defendant Allen & Company, real estate brokers, on June 25, 1924, for sale for the sum of $8,500; that Allen & Company represented to plaintiff that this amount could not be obtained for the property listed, and relying thereon he authorized Allen & Company to sell same for not less than $7,500; that on July 8, 1924, Allen & Company as plaintiff's agent sold the property for $7,500 to the defendant O'Brien, who was an employee of Allen & Company; that defendant O'Brien deposited $250 with Allen & Company as a part payment upon the purchase price; that on July 21, 1924, plaintiff delivered his deed conveying the property to O'Brien, to Allen & Company; that the defendants have acted with intent to defraud plaintiff, and intentionally misled him, by advising him that the best price they could obtain for the property was $7,500, when they knew that a higher price was obtainable; by selling the property for $7,500 without making a reasonable effort to obtain a higher price, and at the time having knowledge of par-

ties who would give a sum in excess of $7,500; by selling the property to O'Brien, who was an employee of Allen & Company, without disclosing such employment to plaintiff, and without such fact being known to plaintiff; by taking unjust advantage of a confidential and fiduciary relationship of defendant with plaintiff in many particulars among others by wrongfully and secretly reselling the property for $3,500, and at a profit concealed from plaintiff, and wrongfully retaining such profit; by demanding and obtaining the plaintiff's promissory note for $375, covering the commission of Allen & Company for selling the property. Alleges that plaintiff paid $40 to Allen & Company on account of the $375 promissory note; that Allen & Company are not entitled to any commission; that plaintiff has suffered damages in the sum of $1,153.50 by reason of defendants' fraud; that the defendants hold the profits derived from the resale of the property in trust for plaintiff.

The defendants in their answer deny the allegations of the complaint, except it is admitted that on July 21, 1924, the plaintiff conveyed the property to O'Brien, and that O'Brien resold the property at a profit of $1,026.25, but that none of the profit was received by Allen & Company. The answer admits that the plaintiff executed a promissory note for $375 as commission in the transaction.

The court found that Allen & Company was Firestone's agent for the sale of the property; that it was originally listed for $8,500; that O'Brien was an employee of Allen & Company; that Allen & Company by its employee Hill, after persuading Firestone to lower his price, made an agreement with O'Brien for the sale of the property; admits the receipt of the $250 as a deposit on account of the purchase price of $7,500; finds that the property was sold to O'Brien by Allen & Company as the agent for the owner Firestone; finds that ''The relationship of O'Brien as an employee of Allen & Company was not disclosed to the plaintiff until after the sale, nor did plaintiff either directly or indirectly learn of that relationship until after the sale, but at the time the said Firestone signed the clause appearing on the reverse side of said deposit sale agreement . . . said Firestone observed the name of O'Brien on a name-plate on the top of the desk at which he was seated in the office of Allen & Company, indicating that O'Brien was connected with

Allen & Company, and at that time said Firestone realized there was some connection between O'Brien and Allen & Company, although he did not realize the significance of said connection as it might concern him. . . . "

Further findings may be summarized as follows: That Firestone had been advised by Allen & Company that his property was sold; that a deposit had been accepted, and that plaintiff was led by defendants to believe that he was bound by said sale, previous to his signing of the formal sale agreement of July 8, 1924; did not at the time realize the significance of O'Brien's relationship with Allen & Company as indicated by O'Brien's name-plate on the desk in the office of Allen & Company, as it might concern said sale until subsequent to the signing of said formal sale agreement of July 8, 1924; that on the date of the sale there was a resale simultaneously by O'Brien to certain parties by the name of Todts, and "That the defendants, particularly O'Brien, derived a secret profit of $1,000.00 from said transaction, which he, O'Brien, kept from plaintiff and for which he and his employer Allen & Company refused to account to the plaintiff."

There was entered upon these findings a judgment: That plaintiff recover from the defendants $1,153.50 as damages; that the defendants account to the plaintiff for the profit realized upon the resale to the Todts; that the note for $375 be canceled; and that the $40 paid by plaintiff to Allen & Company on account of this note be repaid to plaintiff.

The appellants contend, first, admitting that it is elementary that an agent to sell cannot sell to himself without disclosing the fact that he is buying to his principal, but contend this rule has no application to this case where the agent to sell did not sell to itself but to one of its employees; second, the plaintiff at the time he entered into the agreement to sell the property to O'Brien knew that O'Brien was an employee of Allen & Company, hence he cannot rescind the transaction and establish a constructive trust of the profits of the resale; third, even though this court holds that O'Brien is liable, Allen & Company, who did not receive any part of the profit realized upon the resale, is under no liability of any sort to the plaintiff; fourth, even though this court hold that both Allen & Company and O'Brien

are liable, the judgment entered by the trial court is erroneous.

We have summarized quite fully the pleadings, findings, and judgment in the case, as it seems quite necessary so to do for a full understanding of the case.

The first proposition of appellants is that, conceding that a real estate firm cannot sell to itself, without disclosing the fact that it is buying to its principal, yet this rule has no application to a case where the agent did not sell to itself, but to one of its salesmen. We think that an examination of the authorities shows that the agent cannot sell to one of its salesmen or employees without first *disclosing* all the surrounding facts to the principal. One of the leading cases upon this subject is the case of *Burke* v. *Bours*, which was before our supreme court three times, and this particular phase of the case was quite fully discussed in 92 Cal. 108 [28 Pac. 57], where the following language is found:

"In *Sugden* on Vendors, p. 887, it is said: 'Any persons who, by being employed or concerned in the affairs of another, have acquired a knowledge of his property are incapable of purchasing such property themselves.' In *Gardner* v. *Ogden*, 22 N. Y. 350 [78 Am. Dec. 192], 'The defendant Smith was the clerk, or assistant, of his principals. . . . Whatever disabilities they labored under equally attached to him. It would work an entire abrogation of this rule to hold the principal subject to the operation of the rule and exempt his clerks and agents from its effect. It would be opening the door to its evasion, so that it would lose all its vitality and virtue.' The decision goes on: 'I think this is the spirit of all the authorities, and that the honesty and fairness of transactions between principals and their agents demand a firm adherence to these rules, and to bring under their operation, not only the *agent* himself, but those in his *immediate employ*, and who are engaged in the transaction of his business, which is, necessarily, the business of the agent's principal.' " (Italics ours.)

These principles are cited with approval in the cases of *Newell-Murdoch Realty Co.* v. *Wickman*, 183 Cal. 39, at page 44 [190 Pac. 359], and *Salisbury* v. *Younger*, 184 Cal. 783 [195 Pac. 682].

The rule is to place the burden on the agent to make full *disclosure* promptly. See the case of *McCallum* v. *Grier*,

86 S. C. 162 [138 Am. St. Rep. 1037, 68 S. E. 466], in which the court said in part: "A broker employed to sell goods for his principal cannot buy them for himself, nor can a broker employed to buy, buy his own goods unless the principal, *with full knowledge of the facts, assents to the transaction.* The decision states: 'It is immaterial that the broker acts in good faith. . . . The reason of the rule is that, if the broker were permitted to buy from or sell to himself, there would be combined in him the incompatible relation of purchaser and seller, and an interest adverse to that of his principal would be created such as would ordinarily lead to a violation of his duty as agent.' (4 Ency. of Law, 966; 19 Cyc. 207.)" (Italics ours.)

In *Curry* v. *King,* 6 Cal. App. 575 [92 Pac. 665], it is stated: "Therefore, an agent will not be allowed to deal in his own behalf with his principal with reference to the subject matter of the agency, unless he makes *full, complete and honest disclosure of the truth* of the transaction. He is bound to treat with his principal concerning the property over which he has been vested with authority in the utmost good faith, and so religiously does equity require adherence to this rule that a transaction between them as to the property whereby the agent acquires the ownership thereof, is upon its face deemed by law to be fraudulent." (Italics ours.)

In the case of *McCallum* v. *Grier, supra,* it is stated: "It is the duty of an agent to *disclose* fully to his principal every step taken by him in the transaction of the principal's business. If it be the sale of real estate he should keep nothing concealed in his efforts to bring the owner and prospective purchaser together. The *identity* of the purchaser and the *true consideration* should be instantly *disclosed.*" (Italics ours.)

We have examined the authorities cited by the appellants with much care, but we are unable to see wherein they in any way mitigate or in any way narrow the doctrine contended for by the respondent, which we feel is very clearly upheld by the great weight of authority.

The second contention of the appellants to the effect that the plaintiff at the time he entered into the sales agreement knew that O'Brien was a salesman of Allen & Company, therefore he is not in a position to complain, is without

merit, for the reason that the evidence clearly shows that there was not a *disclosure* of all the facts as required by the authorities hereinbefore cited. It is true that the plaintiff saw the name of O'Brien on the name-plate on a desk in the office of Allen & Company, but that was not a full disclosure of all the facts surrounding the sale. Furthermore, the evidence shows, without conflict, that on the very day that the deed of the plaintiff to O'Brien was in escrow with the escrow agent, O'Brien himself secretly sold the said property to Todts by a deed to Todts through the same escrow company at a profit of $1,000. This clearly shows that all the facts and circumstances concerning which it is the duty of the agent and the agent's salesman to fully disclose to the principal, the plaintiff, was not done. The evidence sustains the findings of the trial court in this regard.

The contention of the appellants, that even though O'Brien is liable, that Allen & Company cannot be held responsible because the latter did not receive any of the profits realized from the resale, is without merit from what has heretofore been said. The authorities quoted clearly hold that Allen & Company is legally liable and it is not necessary to further cite authorities sustaining this proposition.

To recapitulate the case briefly: The plaintiff listed property with Allen & Company for sale for not less than $8,500. A salesman in the employ of Allen & Company by the name of Hill persuaded plaintiff to lower his price to $7,500 and the property was sold to O'Brien, also a salesman in the employ of Allen & Company; on the same day or practically the same day, the property was resold by O'Brien to the Todts at a profit of $1,000 *the same escrow agency handling both transactions.* The evidence shows that Hill died before the trial and his testimony was not taken. The appellants earnestly argue that Allen & Company received nothing from the profits and were ignorant of the transaction; that Allen & Company are large real estate operators having many branch offices and employing many salesmen; that they have received no profit and they ought not to be held liable. We think that it is only fair to state that Allen & Company, so far as the evidence shows, were uninformed as to the actions of their salesmen Hill and O'Brien. Allen & Company received a note covering the commission amounting to

$375, upon which the sum of $40 only was paid. Nevertheless, for the reasons which we have herein stated, Allen & Company must be held legally responsible, however unfortunate it may be.

The judgment entered by the trial court in favor of the respondent and against the appellants O'Brien and Allen & Company was for the surrender and cancellation of the promissory note of $375; for the return of $40 paid by the plaintiff to Allen & Company; for damages in the total amount of $1,153.50 against both appellants; and for an accounting as against both Allen & Company and O'Brien of all the profits in connection with the resale of plaintiff's property.

As the evidence conclusively shows that O'Brien resold the property to the Todts simultaneously with the receipt of the deed from the plaintiff; that O'Brien did not occupy the property or rent the same at all, it is clear that the only profit was that made upon the resale of the property, to wit, the sum of $1,000. Whether the $1,000 be denominated damages or profits would seem to be unimportant, because that sum, together with the cancellation of plaintiff's note of $375, and the return of the $40 paid thereon is all the relief that the plaintiff is entitled to recover under any theory of the case. Therefore that portion of the judgment ordering an accounting is erroneous and should be modified by having the same stricken therefrom.

The appellants also complain that the judgment for $1,153.50 is erroneous, and should be reduced to $1,000. But it is apparent, we think, that the $153.50 was intended as interest on the $1,000 resale profit made July 21, 1924, from such date and as this is less than the legal interest on such sums from July 21, 1924, to the date of judgment, it is harmless so far as appellants are concerned, and as plaintiff has not appealed we are warranted in permitting that part of the judgment to stand.

For the reasons stated that part of the judgment of the trial court which orders the appellants to account to respondent is stricken from the judgment, the judgment in all other particulars to stand, and the judgment so modified is affirmed. Respondent to recover his costs.

Tyler, P. J., and Cashin, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on March 21, 1929, and a petition by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on April 18, 1929.