[Civ. No. 13345. First Dist., Div. One. May 7, 1947.]

THOMAS LEON MITCHELL, Respondent, v. JOE LOCURTO, Appellant.

O. H. Speciale for Appellant.

Rea, Free, Jacka & Frasse for Respondent.

WARD, J.—This is an appeal from a judgment in favor of plaintiff, doing business as Thos. L. Mitchell & Company, in the sum of two thousand two hundred fifty dollars as a real estate broker's commission.

Plaintiff Mitchell, a licensed real estate broker, was employed by defendant December 3, 1945, in San Jose, California, under an authorization of sale providing in part: "In consideration of the services of THOS. L. MITCHELL & CO. hereinafter called the agent, I hereby list with said agent, exclusively and irrevocably, for a period of 15 days from the date hereof, the following described property, situate in the County of Santa Clara, State of California, to wit: Property known as 58-60 N. First Street, San Jose, Calif. and I hereby grant said agent the exclusive and irrevocable right to sell the same within said time for FORTY-SEVEN THOUSAND TWO

HUNDRED FIFTY AND No/100 . . . ($47,250.00) DOLLARS and to accept a deposit thereon. To be payable as follows: $13,000.00 on or before December 29, 1945; $8750.00 on January 4, 1946; $6500.00 on the fourth day of January, 1947; $6500.00 on the fourth day of January of each year thereafter until the whole of the purchase price has been paid. Interest on deferred payments at the rate of 3% per annum payable annually. I hereby agree to pay said agent as commission $2250.00. . . . That the evidence of title is to be in the form of a Policy of Title Insurance, issued through CALIFORNIA PACIFIC TITLE INSURANCE COMPANY, to be furnished and paid for by the Seller." The authorization was duly signed by the respective parties.

In the complaint two causes of action were alleged, both of which were based on the aforesaid authorization. Paragraph IV of the first cause of action alleged: "That plaintiff negotiated a sale of said land, and within the time specified in said authorization to sell obtained a purchaser ready, willing and able to purchase said property upon the terms and conditions set forth in said authorization to sell, as is evidenced by a letter executed by the California Pacific Title Insurance Company. . . ." The letter referred to reads as follows: "CALIFORNIA PACIFIC TITLE INSURANCE COMPANY (LETTERHEAD) Thos. L. Mitchell & Co. 97 East Santa Clara Street San Jose, California In Re: S.C. No. 79449 Gentlemen: You advised me the other day that you had an exclusive listing on the Locurto property adjoining our property on the South, for the sum of $47,250.00, $13,000 payable on or before December 29, 1945 and balance to be paid in accordance with the terms therein set forth. We are enclosing herewith the sum of $13,000.00 and request that you purchase for our account in the name of E. M. Evans, the property above referred to. As soon as the Deed is deposited in Escrow, this Company or its nominee will execute a Note and Deed of Trust in Accordance with the terms set forth in the listing. Very truly yours, /s/ GEO. B. MYREN GEO. B. MYREN Manager."

Paragraph IV further alleged, "that on the 18th day of December, 1945, said corporation delivered the sum of $13,000.00 cash to I. A. Frasse, one of its attorneys, and [in]structed him on said date to tender said sum of money to defendant as a part payment of the purchase price of the real property . . . and to inform defendant that said prop-

erty had been sold in accordance with the terms of said written authorization . . . and that upon defendant placing in escrow a Deed to said property conveying title to E. M. Evans, a note and Deed of Trust for the balance of the purchase price, in accordance with the terms of said written authorization, would be placed in escrow by the purchaser; that pursuant to said authorization and instructions of said California Pacific Title Insurance Company and on said 18th day of December, 1945, plaintiff and said I. A. Frasse, who was then and there acting as attorney, agent, and representative for said California Pacific Title Insurance Company, a corporation, in the City of San Jose, County of Santa Clara, State of California, went to defendant; that said I. A. Frasse thereupon at said time and place read and handed to defendant a letter signed by plaintiff, a true and correct copy of which is attached hereto . . .; that said I. A. Frasse at said time and place had in his possession the said sum of $13,000.00 cash, which he thereupon tendered to defendant, but defendant refused to accept said sum of money, or any part thereof, and told plaintiff and said I. A. Frasse that he, the said defendant, could not get his wife to agree to sell the property, and that she would not join in a Deed to the property, and for that reason he was not going to sell and would not accept any part of the money.''

The second cause of action alleges the same facts in the form of a count for services rendered. In each count $2,250 was fixed as the reasonable or agreed value of the services rendered.

The signing of the authorization was admitted but the allegation of the production of a ready, able and willing purchaser was denied in the answer, which further alleged ''That plaintiff has concealed, and did not at any time disclose to defendant that California Pacific Title Insurance Company was interested in the purchase of defendant's real property. . . . That plaintiff did not bring California Pacific Title Insurance Company and defendant together. That California Pacific Title Insurance Company did not enter into a written contract to purchase, and did not make any offer to defendant to do so.''

The evidence introduced by plaintiff established that December 18, 1945, was the last day of the authorization to sell. I. A. Frasse, a member of a firm having a monthly retainer with the California Pacific Title Insurance Company,

testified that on that date he was told by George Myren, the local manager of California Pacific Title Insurance Company, "that they wished to buy this property and that the authorization of the agent called for a down-payment of $13,000.00, and he said that he wanted me to go over and make this payment to Mr. Locurto, and he then counted out to me $13,000.00 in United States currency in Mr. Mitchell's presence, and Mr. Mitchell and I recounted it to be sure it was correct, and placed it in an envelope; and Mr. Myren then told me to go with Mr. Mitchell to Mr. Locurto . . . and make him this payment for the purchase of this property and tell him to place his deed in escrow, and the note and deed of trust for the balance would be placed in escrow . . . Mr. Myren said they wished to take title to the property in the name of Evans rather than California Pacific Title Insurance Company." Myren testified that the reason for using the name of Evans was that "there was a little doubt in my mind whether the company could execute a note and trust deed . . . being the insurance company—without a special resolution."

Frasse further testified that he told defendant he "was there to accept the offer" and read him a letter, a portion of which provided: "In accordance with the written authorization to sell given by you on December 3, 1945, to the undersigned, Thos. L. Mitchell & Co., we have sold the property known as 58-60 North First Street, San Jose, California, to E. M. Evans for $47,250.00, $13,000.00 in cash of which is handed you herewith." He then produced the envelope containing $13,000 and "said, 'Here's the down-payment on the property.' I said 'If you will put the deed in escrow the note and deed of trust will be placed there,' and Mr. Locurto then said, 'It is no use'—or words to that effect— 'my wife won't let me go through with the sale, so I am not going through with it'; and I said, 'Well, here's the money; are you refusing to accept it?' and he said 'Yes'; and then I said to Mr. Locurto, 'Well, you realize that you have signed a binding agreement to sell this property, and that we are accepting it and you are bound thereby, and legal consequences may come from this action,' and he said, 'Well, I will have to see my attorney about that.' I said, 'Then you are refusing to go through with this sale and refusing to accept this money?' He said, 'I am,—Mr. Frasse' . . ."

Frasse's testimony that he did not say that he was attorney for the California Pacific Title Insurance Company agreed

with defendant's testimony. As to whether or not Frasse read plaintiff's letter to defendant or not, defendant testified "I don't think he did." Said letter was left "on top of a box in the North San Pedro Street house." Defendant's version of the conversation of December 18th is as follows: "Mr. Mitchell introduced him to me—he says 'This is Mr. Frasse.' I says, 'What can I do for you, gentlemen?' He says, 'We have come here to close the deal.' I said, 'I am not just ready to close the deal at the present time,' so he says, 'Well, here's the money here.' 'Well,' I says, 'I can't close the deal without consulting my wife.' 'Well,' he says, 'you don't need to if that's the way you feel.' 'Well then' I said, 'if you don't give me no time to consult my wife, let me get my attorney,' and he says, 'Who is your attorney?' I says, 'I have several of them,' and I says, 'I don't know which one to pick.'" The money was not counted. Defendant testified that he was afraid to accept the money on North San Pedro Street as "It is a tough neighborhood." Frasse testified that it was still within banking hours when the tender was made to defendant "if he had wished to go to the bank and he could have accompanied us."

■ Before considering the findings which are attacked as not supported by the evidence, consideration must be given to the court's finding "that at all of the times mentioned in said second amended complaint I. A. Frasse was the *duly appointed and authorized agent,* attorney and representative of California Pacific Title Insurance Company." (Italics added.) Civil Code section 2309 requires that where an agent is given authority to enter into a contract required by law to be in writing, such authority can only be given by an instrument in writing. An agreement for the sale of real property is required by Civil Code section 1624 to be in writing. Furthermore, subdivision 4 thereof specifically provides that "such agreement, if made by an agent of the party sought to be charged, is invalid, unless the authority of the agent is in writing, subscribed by the party sought to be charged." Such invalidity, however, may not be raised if the principal, in this case California Pacific Title Insurance Company, does not object. In *Wood Estate Co.* v. *Chanslor,* 209 Cal. 241, 250-251 [286 P. 1001], it is held: "Appellants' objection is that the authority of the agent must be in writing under our statute of frauds. Just how a third party to such a contract can attack it, when the two principals do not object, is not made to appear. It would seem to be the rule

that third parties cannot avail themselves of the defense of the statute if the two principals acquiesce. (12 Cal.Jur. 925; 25 R.C.L. 736.)'' (See, also, *Nelson* v. *Colton,* 36 Cal.App. 69 [171 P. 701]; *Scott* v. *Glenn,* 87 Cal. 221 [25 P. 405].)

■ Since the record indicates not only that Frasse is a member of a firm on a monthly retainer with the California Pacific Title Insurance Company, but that he received an express oral authorization from Myren to act for the California Pacific Title Insurance Company in the purchase of defendant's property, the finding that the latter ''duly appointed and authorized'' Frasse to act as their agent is supported by the evidence. Similarly, findings III, V and VII challenged by defendant are supported by the evidence.

Finding III is to the effect that ''plaintiff procured the California Pacific Tile Insurance Company, a corporation, as a purchaser ready, willing and able to purchase the real property. . . .'' Having ''duly appointed and authorized'' Frasse as their agent, California Pacific Title Insurance Company played the role of an undisclosed principal in the transaction with defendant. (Restatement of the Law, Agency, § 186; and see 1 Cal.Jur., §§ 131-136, pp. 854-861.) Defendant does not contend that he ever stated that he would not sell to an undisclosed principal or to California Pacific Title Insurance Company; hence there is nothing to indicate that defendant could not have held California Pacific Title Insurance Company had the contract been completed. (Restatement of the Law, Agency, §§ 188, 189, 193; see, also, *Coulter* v. *Howard,* 203 Cal. 17 [262 P. 751].) ■ Evidence that Frasse was produced by plaintiff before defendant and there offered to purchase the property according to the terms of plaintiff's authorization suffices to sustain the finding that plaintiff procured the California Pacific Title Insurance Company ''as a purchaser ready, willing and able to purchase.''

■ By its fifth finding, the trial court found ''that it is not true that the plaintiff concealed that the California Pacific Title Insurance Company was interested in the purchase of defendant's real property; that it is true that plaintiff did not at any time disclose to the defendant that California Pacific Title Insurance Company was interested in the purchase of defendant's real property; that defendant at no time asked plaintiff for the name of the prospective purchaser, and

defendant at no time asked the plaintiff if the California Pacific Title Insurance Company was interested in the purchase of defendant's real property.''

The word ''conceal'' pertains to affirmative action likely to prevent or intended to prevent knowledge of a fact. (Restatement of the Law, Contracts, § 471, p. 891 et seq.; Restatement of the Law, Restitution, § 8, p. 32 et seq.; 8 Words and Phrases, Perm. Ed., 328-341.) It has reference to some advantage to the concealing party or a disadvantage to some interested party from whom the fact is withheld. Here there is merely a failure to disclose and a failure to ask. The trial court correctly found that plaintiff was guilty of no concealment.

The case does not involve a sale by a broker to himself or to one of his employees, as it is conceded that E. M. Evans, plaintiff's bookkeeper, was merely a dummy. Hence the rule illustrated by *Langford* v. *Thomas,* 200 Cal. 192 [252 P. 602]; *Calmon* v. *Sarraille,* 142 Cal. 638 [76 P. 486]; *Burke* v. *Bours,* 92 Cal. 108 [28 P. 57], and *Firestone* v. *O'Brien,* 97 Cal.App. 43 [274 P. 1006], that a broker in such a situation must make a complete disclosure of all the surrounding facts to his principal is not in point. Here the purchaser is Frasse's undisclosed principal, California Pacific Title Insurance Company.

To support his contention that plaintiff is not entitled to recover a commission as he did not disclose the name of the proposed buyer, defendant cites *Barrios* v. *Foley,* 83 Cal.App. 105 [256 P. 573]; *Jolton* v. *Minster, Graf & Co.,* 53 Cal.App. 2d 516 [128 P.2d 101], and *Baird* v. *Madsen,* 57 Cal.App.2d 465 [134 P.2d 885]. Language as to good faith found in the Barrios opinion is not relevant since that case turned on the fact that the proposed buyer was financially unable to buy; furthermore, the memorandum of sale upon which the broker relied provided that the goods must meet the buyer's approval. The basis of the Jolton case was that the agents actually found a purchaser, but delayed consummating the sale until the principal's option to purchase the property had expired, causing the principal to lose the profit he would have made had the sale been concluded during the lifetime of the option. In the Baird case the agent failed to produce the required buyer within the lifetime of his exclusive agency and failed to plead an extension of said agency; moreover, the agent dismissed the proposed purchaser and practiced trickery.

Finding VII is the crux of the case. It reads: "That it is true that California Pacific Title Insurance Company did not enter into a written contract of purchase and did not make any offer to defendant to do so, but said California Pacific Title Insurance Company at the time and place of meeting with the defendant on the 18th day of December, 1945, was willing, ready and able to enter into such a written contract of purchase if defendant had so desired it to do so, and at said time and place said California Pacific Title Insurance Company orally offered to defendant to perform all of the terms and conditions of said written authorization of sale, tendered defendant $13,000 in cash, and offered to place in escrow a note and deed of trust for the balance of the purchase price . . .; that at said time and place defendant did not wish said California Pacific Title Insurance Company to enter into a written contract of purchase, and defendant told said California Pacific Title Insurance Company that he would not sell the property, and he refused to accept said tender of $13,000.00 or any part thereof." As in the case of finding III, this finding is correct in that California Pacific Title Insurance Company played the role of an undisclosed principal in the transaction with defendant.

As to the fact that California Pacific Title Insurance Company did not enter into a written contract of purchase, the leading case of *Gunn* v. *Bank of California*, 99 Cal. 349, 353 [33 P. 1105], states that there are alternative ways by which a broker may earn his commission: "The contract of the broker is to negotiate a sale; that is, to procure a valid contract to purchase, which can be enforced by the vendor if his title is perfect; or if he does not procure such contract, to bring the vendor and the proposed purchaser together, that the vendor may secure such a contract, unless he is willing to trust to an oral agreement." (Accord, *Twogood* v. *Monnette*, 191 Cal. 103 [215 P. 542]; *Ramsdell* v. *Krehmke*, 95 Cal.App. 195 [272 P. 333]; *Williams* v. *Freeman*, 35 Cal. App.2d 104 [94 P.2d 817].)

When Frasse as agent of California Pacific Title Insurance Company was brought by plaintiff to defendant, plaintiff brought the "vendor and the proposed purchaser together" in compliance with the rule of the Gunn case. This very fact serves to distinguish the present case from *Mattingly* v. *Pennie*, 105 Cal. 514 [39 P. 200, 45 Am.St.Rep. 87]; *Massie* v. *Chatom*, 163 Cal. 772 [127 P. 56]; *Sprague* v. *Dolan*, 70 Cal.

App. 330 [233 P. 84], and *Metcalf* v. *Guercio,* 74 Cal.App. 637 [241 P. 576]. This is not a case where all that is involved is a letter from the proposed purchaser, California Pacific Title Insurance Company, asking the agent who seeks his commission, plaintiff herein, to purchase the seller's property.

Here an undisclosed principal's duly authorized agent was brought to the seller. Frasse told defendant he was there to purchase the property according to the terms of the plaintiff's authorization. Hence *Mott* v. *Minor,* 11 Cal.App. 774 [106 P. 244], is distinguishable, for there the complaint alleged that one Friant "was then and there able, ready and willing to purchase" whereas the evidence showed that he was acting for an undisclosed principal.

The judgment is affirmed.

Peters, P. J., and Bray, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied June 30, 1947.