Argued September 19, reversed October 16, 1928.

O. K. PORTER v. FRANCES M. BUCKLEY, ADMINISTRATRIX.

(270 Pac. 905.)

For appellants there was a brief over the name of *Mr. Paul W. Childers,* with oral arguments by *Mr. George Mowry* and *Mr. Harry G. Hoy.*

For respondent there was a brief over the names of *Messrs. Cake & Cake* and *L. A. Liljeqvist,* with an oral argument by *Mr. Liljeqvist.*

BELT, J.—This is an action to recover damages for breach of an executory contract to convey real property. It arose as follows: On March 25, 1925, Frances M. Buckley and her husband, Charles A. Buckley, now deceased, listed with plaintiff, a real estate broker, their 1600-acre ranch in Sherman County, at a price of $40,000. The authority to sell extended to July 1, 1925. On March 31, 1925, plaintiff and the Buckleys entered into a written contract whereby the plaintiff agreed to sell to the Buckleys certain business property in the City of Portland for $60,000. There was a mortgage of $15,000 on the property, which the purchasers assumed and agreed to pay. In exchange for the Portland property the Buckleys agreed to convey their Sherman County ranch, which was clear of encumbrance, and to assign to plaintiff 33 shares of stock in the Citizens' Bank of Grass Valley, Sherman County, Oregon. The contract provided for the exchange of warranty deeds, to be delivered and the transaction closed within forty days from the date thereof. It was also stipulated that "Each party covenants to and with the other that he is the owner in fee simple of his respective

property, that the same is free from all encumbrances except as above stated, and that he has the right to sell and convey the same." On March 31, 1925, plaintiff did not have title in the property which he had contracted to convey, but on that date, in consideration of $100, procured an option from the owner thereof, Edward H. Niemeyer, to buy it for $40,300. Within the forty-day period provided for the exchange of properties, Niemeyer and his wife executed a warranty deed conveying the Portland property in question to the Buckleys and placed it in the First National Bank of The Dalles with instructions to deliver, subject to mortgage of $15,000, upon payment of $25,200. On April 3, 1925, plaintiff entered into a written contract with Ernest Eslinger and his wife to sell to them the Buckley ranch for $40,000, but this did not include the thirty-three shares of bank stock. On the same date the Eslingers made written application to the Pacific Coast Joint Stock Land Bank, Portland, for a loan of $25,000 to be secured by a mortgage on the Sherman County ranch. The bank agreed to loan $15,913.67 on this property and forwarded to the First National Bank at The Dalles its check for the above amount together with certain escrow instructions relative to execution of note and mortgage. An additional loan of approximately $11,000 was to be obtained from The Dalles Investment Company in consideration of a second mortgage upon the property the Eslingers had agreed to purchase. This transaction was also to be consummated through the First National Bank upon exchange of deeds. It will thus be seen that from the proceeds of the Eslinger sale plaintiff proposed to pay to the Neimeyers the amount stipulated in the option contract, viz., $25,200. Before this could be accomplished there

must have been a delivery of deed to the Buckley property. Mr. Buckley died in May, 1925, and a few days thereafter his wife repudiated the contract with plaintiff and gave notice that the deal was off.

Plaintiff alleges that he was ready, able and willing to convey the property in accordance with the terms of his contract, but, on account of the wrongful rescission by defendants, the exchange of property was not made, resulting in damages to him in the sum of $10,940. In other words, plaintiff asserts that, if the Buckleys had complied with their part of the contract, he would have made a profit as above stated. Plaintiff asserts his damage to be the difference between what he would have been obliged to pay the Neimeyers, or $25,300, and the value of the ranch and the bank stock, alleged to be $36,240. It is plaintiff's theory that his contract of agency terminated on the execution of the agreement of March 31, 1925, and that thereafter he was dealing with the defendants at arm's-length.

Defendants deny that the plaintiff was ever ready, able and willing to comply with the contract on his part and allege that they were induced to make the agreement to exchange properties by reason of the fraud of the plaintiff who at that time was their agent and was endeavoring to make a secret profit. Plaintiff was charged with fraud in that he represented to defendants that the Portland property was worth in excess of $60,000, "and all the said plaintiff was making or was expecting to make out of the said deal was the commission provided for under the contract that he then held with the said Buckleys," dated March 25, 1925. The theory of defendants is that the brokerage contract did not terminate and was not merged in the later agreement. There are

other allegations of fraud which we deem immaterial in the consideration of this case.

At the conclusion of plaintiff's case in chief defendants moved for a nonsuit on the following grounds:

"First: the amended complaint in this case does not state a cause of action in that it shows upon its face that at the time the plaintiff claims to have entered into the contract with Frances M. Buckley and Charles A. Buckley upon which he brings this action, he did not own the property which he covenanted in said contract that he was the owner in fee simple of, nor did he at that time have any binding agreement for the conveyance thereof, was not in a position to compel the transfer thereof to him by any proceeding whatsoever.

Secondly: that the evidence shows upon its face that the plaintiff was never in a position certainly, to be able to deliver to the defendants the property which he was to convey to them under and by virtue of the terms of the agreement upon which he relies in this case. * * And it appears from the evidence in this case that there never was a time when the plaintiff was ready, able and willing to transfer the said Portland property known as the Niemeyer property, to Frances M. Buckley and Charles A. Buckley, but that on the other hand, there was never a time when the deed from the Niemeyers which the evidence shows was placed in the First National Bank at The Dalles was not subject to recall by the Niemeyers, and especially by Mrs. Niemeyer, who was not bound by any contract whatsoever with reference to the property."

The cause was submitted to a jury and a verdict returned in favor of plaintiff for $5,072.50. Defendants appeal.

 Notwithstanding the verdict of the jury, we can reach only one conclusion in this case—that plain-

tiff, throughout the transaction, was the agent of the defendants. We see no reasonable basis for the finding that the contract of agency was terminated by the written agreement dated March 31, 1925. The latter instrument was merely the means of enabling the plaintiff, as agent, to dispose of the Buckley property. As plaintiff says, the Buckleys knew that he did not have title to the property which he contracted to convey. They knew it belonged to the Niemeyers. Porter had no property to sell and no money with which to buy. He was unquestionably endeavoring to make a secret profit. While admittedly acting as agent, he made Niemeyers an offer on March 30th, of $38,000 for their property, but it was not accepted. Mr. Henry, of the Geo. A. McKenna real estate firm, which was acting as agent for the Niemeyers, after testifying about returning the deposit of $150 to the plaintiff, said: "I tried to raise his price to get him up to the price Mr. Niemeyer would approve." Thereupon the plaintiff made his second offer, namely, $40,300, which was accepted by the Niemeyers. Without disclosing the price for which the Niemeyer property could be purchased, he entered into a contract with his principal obligating him to pay $60,000 for the property which plaintiff at that time knew could be purchased for $40,300. The transaction reeks with fraud. It should require no citation of authorities that an agent who undertakes to contract with his principal must make a full, fair and frank disclosure of the facts concerning the transaction. It will not do to obtain knowledge while acting as agent and use it to the detriment and damage of the principal. As stated in Mechem on Agency (2 ed.), Section 1207:

"* * * it is absolutely essential, when an agent undertakes to sustain dealings with his own principal, that it shall appear that the agent frankly and freely gave to his principal full information respecting, not only the agent's relation to the contract, but also, the various conditions respecting time, value, situation, condition and the like, which may fairly be deemed to be material in determining upon the desirability of entering into the contract."

Also see 21 R. C. L., page 828, wherein it is said:

"In the exercise of good faith, skill and diligence, the agent is bound to keep his principal informed of all matters that may come to his knowledge concerning the principal's rights and interests. For example, if after receiving instructions to sell property on certain specified terms, the agent learns that other and more advantageous terms can be obtained, it is his plain duty, and he is under every legal and moral obligation, to communicate the facts to the principal, that he may act advisedly in the premises."

Would any fair-minded person contend that, if plaintiff had informed the Buckleys that the Niemeyer property could be purchased for $40,300, they would have entered into a contract with him to pay for such property the sum of $60,000? Ordinarily we have much respect for the verdict of a jury, but in this case we are convinced that, notwithstanding the able and fair instructions of the trial court, there has been a miscarriage of justice. Courts are instituted to administer justice and it seems to the writer that this is an ideal case in which to function.

The motion for nonsuit should have been granted. The plaintiff's complaint is drawn on the theory that he was a vendor whereas the evidence showed beyond reasonable controversy that he was an agent. There is a fatal variance between the pleading and the proof.

Furthermore the record discloses that, while such fiduciary relations existed, plaintiff perpetrated a fraud upon his principal in that he failed to advise him of facts vital to the latter's interest.

It follows that the judgment against the defendant is reversed and an order is here entered dismissing the action. REVERSED.

BEAN and ROSSMAN, JJ., not sitting.