Argued March 27; affirmed May 8, 1945

RIDGEWAY ET AL. *v.* McGUIRE ET AL.

(158 P. (2d) 893)

Before BELT, Chief Justice, and ROSSMAN, KELLY, BAILEY, BRAND and HAY, Associate Justices.

*F. M. Phelps,* of Portland (Phelps & Burdick, of Portland, on the brief), for appellants.

*Paul A. Sayre* and *George C. Reinmiller,* both of Portland, for respondents.

HAY, J.

This is an action against a real estate broker and one of his salesmen to recover an alleged secret profit.

As stated in the complaint, the cause of action was substantially as follows: Plaintiffs owned an interest in a city lot, as vendees under a contract for the purchase thereof. Two dwelling-houses were situated upon the land. In October, 1942, they listed the premises with the defendant Frank L. McGuire, as broker, for sale at a price of $2750. In November, 1942, the defendant Rossman, a salesman and agent for McGuire, informed plaintiffs that it was impossible to sell the premises for the listed price, and told them that he had a prospective purchaser who would pay $1950 therefor. The plaintiffs were inexperienced, and uninformed as to the value of the premises or of property in the vicinity. Relying upon Rossman's representations and upon his assurance that that was the best price that could be obtained, they consented to a sale at $1950. Unknown to them, the sale was made to Rossman himself, who obtained a deed of conveyance of the property direct from the owner. He paid the owner $1166.44 (that being the unpaid balance under the owner's contract of sale to plaintiffs), and paid plaintiffs $680.88, which, after deducting unpaid taxes and other charges, and a commission of $97.50 to defendant McGuire, represented the balance of the agreed sale price of $1950. Prior to the purchase by Rossman, defendants had sold a portion of the premises, containing one of the dwelling-houses, to Paul R. Barringer for $1800, and the remaining portion, containing the

other dwelling-house, to one Summerfield for $1950, whereby they appropriated to themselves a secret profit in the sum of $1800.

The defendants answered by general denial, and affirmatively alleged that McGuire was employed by plaintiffs to sell or attempt to sell the premises at a price of $2750; that he was unable to effect a sale at that price, and that plaintiffs thereafter reduced the price to $2300; that McGuire attempted to make a sale at that figure but could not; that he did procure a person who offered to purchase the premises on terms for $2,500, but that plaintiffs refused such offer; that thereafter plaintiffs sold the premises to defendant Rossman for $1950 in cash; and that plaintiffs were informed of the fact that Rossman, a salesman of the defendant McGuire, was the purchaser, and were aware of all conditions and facts surrounding the sale.

Trial by jury resulted in a verdict against defendants in the sum of $1,800, and they have appealed.

Appellants contend that plaintiffs were unable to make a sale of the property in any other manner than in one parcel and for cash, because of the fact that they were purchasing it under a contract covering the whole property. All that the evidence indicates upon this point, however, is that the property could not be sold by plaintiffs unless and until they paid the outstanding balance due the owner—in other words, until they acquired title.

The trial court, over objection by defendants, permitted evidence to be received of the prices for which the defendant Rossman resold the property in two parcels. Appellants contend that this was error, for the reason that the evidence was irrelevant and tended

to raise a collateral issue. Respondents, however, say that the evidence was admissible as proof of the amount of the secret profit realized by the defendants. They say, moreover, that the resale was an inherent part of the fraudulent scheme alleged in the complaint.

■■ If, at the time when Rossman became the purchaser of the premises for $1950, the defendants knew that, by subdividing the property, a greater price therefor could be obtained, and failed to advise plaintiffs of that fact, they were guilty of a breach of their duty as real estate brokers. *Rodman v. Manning,* 53 Or. 336, 99 P. 657, 1135, 20 L. R. A. (N. S.) 1158; *Stone v. Leonard,* 120 Or. 427, 251 P. 299; *Porter v. Buckley,* 127 Or. 22, 270 P. 905; Mechem, Agency, 2d ed., section 1207. The fact that greatly profitable resales were made by Rossman, through McGuire as his broker, either prior to or within a few days of his purchase, was some evidence, we think, of such breach of duty. We think that evidence of such resales and of the prices realized thereby was relevant and admissible.

The defendants' motions for nonsuit and for a directed verdict in their favor were denied. They assert that this was error, and that the evidence was not sufficient to sustain the verdict of the jury.

Plaintiff Harvey W. Ridgeway testified that Rossman told him that he had a cash offer of $1950; that the property was being sold to Mr. Barringer; that "$1950 is all these people will pay." He testified further that plaintiffs were not informed that either Rossman or McGuire was the purchaser; that he, Ridgeway, signed a blank form which Rossman said could be filled out later; that, prior to the time of the sale, he had seen Barringer at the property; and that his knowledge of the fact that Rossman had become the purchaser

was acquired from Barringer. On cross-examination, he stated that plaintiffs had to sell both houses together, and could not divide them and sell them separately unless he paid off the lady from whom he was purchasing; that he was willing to sell for $2500 on time; that he received no cash offer except the one which Rossman said he had procured; that the owner of the property wanted her money as it became due, but that he was not in default under his contract; that Rossman did not tell him "for sure" who was buying. He admitted that he did not know the exact date when Barringer came to see the property, and that he made no inquiry of Summerfield, the other person to whom Rossman resold. Mrs. Mary E. Ganiard, the person from whom the Ridgeways purchased, testified that Mr. Rossman came to her and told her that "he had sold the place", and asked her to come to Mr. McGuire's office; that she did so, and there signed a deed conveying the property to Rossman; that, on her commenting to Rossman upon the fact that his name appeared upon the deed as grantee, he said: "Yes, I bought it for a lady who gets a pension, and she can't buy property in her name and so I am buying it for her in my name." Mr. Ridgeway was present on that occasion, but Mrs. Ganiard did not think that he read "the papers".

Mr. Rossman testified that the plaintiffs were fully informed that he himself was purchasing the property in his own behalf, and said that, prior to such purchase, he had made no arrangements whatever with either Barringer or Summerfield to resell to them. Both Barringer and Summerfield corroborated him. Barringer had made a $100 deposit with McGuire upon another deal, which was never consummated, and, when Ross-

man sold a portion of the property in suit to Barringer, his deposit on the other deal was credited as a down payment. He failed to make any further payments, and the portion of the property which he had contracted to purchase was afterwards resold to another person. Summerfield made a deposit of $200 as earnest money on his purchase. Up to the time of the trial, he had made all payments which had become due under his contract, and it was not in default.

Mr. Rossman's attitude in the transaction is indicated by the following quotation from his testimony:

" * * * He (Ridgeway) listed the house at his price and he came in and was anxious to sell and he cut it to $2350.00, at which time I gave him the offer of $1950 which he accepted. *I did not give him any advice at any time.*"

This attitude is illustrated further by the following portion of the cross-examination of Ridgeway:

"Q. All right, I believe you said that Mr. Rossman did not make any statement about him buying the property? A. I did.

"Q. You didn't care who bought the property so long as you got your money out of it? A. Mr. Rossman led me to believe—

"Q. No, answer my question. Did you care who bought the property so long as you got your money? Now, don't look at your counsel. Answer the question, please. * * * Did you care who purchased that property so long as you got your money? A. Not as long as it was a fair deal.

"Q. You knew that you were selling it for $1950.00? A. I knew I was selling it for $1950.00.

"Q. You knew it was to be cash and you were to be paid? A. Yes.

"Q. And you got your money? A. That is right."

■ While the market for the property, when subdivided, appeared to be brisk, the evidence for plaintiffs indicates that defendants did not advise them of this important factor, in connection with Rossman's offer to purchase for $1950 cash. It seems to us this was a material matter which should have been called to their attention. It was the duty of the broker, in good faith, to give the plaintiffs the benefit of his knowledge and advice, and to keep them informed of all matters affecting their interests which came to his knowledge. Failure to do this constitutes fraud in law, for which the broker is liable in damages. 12 C. J. S., Brokers, section 41; *Burgess v. Charles A. Wing Agency,* 139 Or. 614, 11 P. (2d) 811. There was evidence, which the jury were entitled to believe, that Rossman concealed from the plaintiffs the fact that he was the purchaser. If this was true, plaintiffs were entitled to hold the broker liable for whatever secret profits may have resulted. *Dias v. Favell-Utley Realty Co.,* 126 Or. 227, 269 P. 207; Anno., 62 A. L. R., at page 71. There was, on the other hand, evidence on the part of defendants that plaintiff Harvey W. Ridgeway was asked by them if it was not possible to divide the property and sell to different purchasers rather than to one; that Ridgeway said that there was "a contract of mortgage" on the property and he had not paid for it; that it was suggested that the property be divided, the mortgage be paid off, and a new mortgage be effected; that he was informed that two properties are usually more difficult to sell than one (which seems somewhat inconsistent with the theory that defendants advised him to subdivide); that plaintiff, however, "wanted his cash for some particular reason", had tried unsuccessfully to refinance, and appeared desperately anxious to sell within the next few days. All this was denied by

Ridgeway, and, upon the conflicting evidence, the verdict of the jury is decisive.

■ In our opinion, the motions for nonsuit and for directed verdict were properly denied.

■ Upon the measure of damages, the defendants requested the court to instruct the jury as follows:

"You are further instructed that if you should find a verdict for and in behalf of plaintiffs and against either one of the defendants, then, in that event, in allowing any damages to plaintiffs you should take into consideration the fact that the plaintiffs' property could not be sold upon terms or that the plaintiffs could not sell this property upon terms and could not divide the property and sell it in two separate parcels, and that it was necessary for plaintiffs to sell said premises in one parcel rather than in two separate parcels."

The request was refused, and this is assigned as error.

We think that the requested instruction was faulty. Whether or not the property was resold in one parcel or subdivided is not involved here. Plaintiffs sued to recover a secret profit, and the amount thereof was the measure of their recovery. The request was properly refused.

■■ Another instruction requested by the defendants reads as follows:

"You are instructed that the measure of damage in this case is the difference, if any, between the Nineteen Hundred Fifty Dollars ($1950.00) which it is admitted Rossman purchased the premises for, and the reasonable marketable value at said time of said premises if the same was sold for cash and in one parcel. The fact that said premises may have been divided into two parcels and sold on terms

438

> at a higher price has nothing to do with the measure of damage in this case.''

This instruction likewise was refused. In support of their suggested measure of damages, appellants cite Restatement, Agency, vol. 2, section 424; *Waterbury v. Barry,* 145 App. Div. 773, 130 N. Y. Supp. 517; *Greenfield Savings Bank v. Simons,* 133 Mass. 415; *George N. Pierce Co. v. Beers,* 190 Mass. 199, 76 N. E. 603; and *Dias v. Favell-Utley Realty Co.,* supra (126 Or. 227, 269 P. 207). None of these authorities, however, supports appellants' theory. All of them appear to fix the measure of damages as the difference between the price obtained by the owner and the actual market value of the property. They say, however, that the principal, at his election, may compel an accounting by the broker of his secret profits. Assuming, as the verdict of the jury obliges us to assume, that the defendants defrauded plaintiffs and thereby realized a secret profit, we know of no rule of law which would permit them to retain the secret profit merely because it was realized by subdividing the property and selling it upon terms, rather than by selling it in one body and for cash. The plaintiffs are suing to recover the difference between the amount which Rossman paid them and the amount for which he resold the property. Whether that difference be denominated profit or damages is immaterial; it is the measure of their right of recovery under the pleadings in this case. *Firestone v. O'Brien,* C. C. A. 1, 97 Cal. App. 43, 274 P. 1006.

■ It is objected by appellants that the court below treated the resales of the property as if they had been completed by full payment, whereas only relatively small down payments had been made and liberal terms extended upon the remainder. We think, however, that

the price at which the property was resold was competent evidence of the value of the property, (*Springer v. City of Chicago,* 135 Ill. 552, 26 N. E. 514, 12 L. R. A. 609) and a necessary basis upon which to determine the amount of the secret profit. The fact that the resales were on terms is immaterial. The unpaid balances carried interest at six per cent per annum, and the terms were apparently satisfactory to Rossman.

■ Appellants complain that the damages, if any, suffered by plaintiffs, were uncertain, speculative and capricious. Plaintiffs, however, proved the amount of their loss, or, in other words, the amount of the defendants' secret profit, as nearly as the circumstances permitted, and thus complied with the requirements of law as to reasonable certainty. Restatement, Contracts, section 331, comment a.

■ Appellants say that it was the duty of the trial court definitely, correctly and specifically to instruct the jury as to the proper method of determining the amount of recovery, and that it should do so of its own motion and without request. In support of this contention, they cite 64 C. J., Trial, section 557. This court has held that it is the duty of the trial court, *when properly called upon,* to declare the law applicable to the case. *Snabel v. Barber,* 137 Or. 88, 300 P. 331. It is, of course, the court's duty to instruct upon the measure of damages. *Curry v. Windsor,* 22 Ariz. 108, 194 P. 958. In the case at bar, the court instructed as follows:

"* * * They (the plaintiffs) must further prove that the defendants made a secret profit as a result of the alleged fraud, and the amount of such profit. They can not recover if they have not established all the elements which they are required

to establish, and they can not recover in any amount in excess of $1800.00, because that is the amount of secret profit they allege, and they are bound by the allegations of their complaint, and so, if you find from the evidence and the instructions the court has given you, and the further instructions he will give you with respect to burden of proof, and the matters that must be established, that the plaintiffs have sustained the burden of proof resting upon them, and they have established it as a result of fraud that the defendants obtained for this secret profit, then it is your duty to find for the plaintiffs, and in such an amount, if you find, if at all, that they have profited.   *   *   *''

Appellants' criticism of the foregoing instruction is that it was an invasion of the province of the jury. They cite, in this connection, *Smith v. Laflar,* 143 Or. 65, 20 P. (2d) 391. That case, however, does not support the criticism. There, the objectionable instruction permitted the jury to award plaintiff such an amount as general damages, not exceeding the amount sued for, ''as you find would fairly compensate him for the pain and suffering *plaintiff has been and will suffer* (sic) on account of the injuries *he sustained''.* (Italics ours.) This, obviously, was a charge on the facts and an invasion of the province of the jury, but it is not perceived wherein the same criticism applies to the court's instruction in the present case.

■ The effect of the jury's verdict was to award plaintiffs the difference between what Mr. Rossman paid for the property and the amount for which he resold it. Appellants contend that allowance should have been made for the ''attendant prerequisites''— presumably meaning the expenses of resale—but (assuming, without deciding, that such expenses were

deductible) there appears to have been no evidence offered by them as to the detail or amount thereof.

▉▉▉▉ In justice to Mr. McGuire, it must be stated that the evidence indicates that he was not personally aware of any of the circumstances of the transaction under discussion. However, under the law, he must answer in general damages for his salesman's breach of faith. 12 C. J. S., Brokers, section 41; 8 Am. Jur., Brokers, section 91, note 6; Anno., 61 A. L. R. 277, 279. In addition to general damages, the plaintiffs demanded a tremendous sum ($50,000) in exemplary damages, but, under the circumstances, the trial judge wisely eliminated exemplary damages from the case.

The judgment is affirmed, with costs.