Clarke E. DAVENPORT, Appellant,

v.

MUTUAL BENEFIT HEALTH & ACCIDENT ASSOCIATION and Continental Casualty Company, Appellees.

No. 18780.

United States Court of Appeals
Ninth Circuit.

Dec. 23, 1963.

———◇———

Howard R. Lonergan, Portland, Or., for appellant.

King, Miller, Anderson, Nash & Yerke, and Clifford N. Carlsen, Jr., Portland, Or., for appellee Mutual of Omaha Ins. Co.

Hollister & Thomas, and Robert H. Hollister, Portland, Or., for appellee Continental Cas. Co.

Before BARNES, HAMLEY and DUNIWAY, Circuit Judges.

BARNES, Circuit Judge.

This is an appeal from a judgment dismissing the action below for lack of jurisdiction. An appeal lies here (28 U.S.C.A. § 1291). The action below relies for jurisdiction upon diversity (28 U.S.C.A. § 1332). Defendant's answer claims the amount in controversy does not exceed $10,000. Plaintiff urges it does.

Plaintiff set forth an action at law for deceit against the two defendant insurance companies, alleging they had defrauded him out of the benefits under his sickness and accident policies by representing to him that his condition was neither sickness nor accident and would not come within the policy coverage, thereby for a small amount of money obtaining his release from all future liability under these policies, although at the time both companies knew his condition was within the policy coverage, and that he would inevitably become entitled to large payments thereunder. Plaintiff claimed as damages not only the expected benefits from these policies which were less than $10,000, but also exemplary damages, making the total amount of damages claimed against both companies the sum of $100,000 (Tr. I, pp. 1, 2, 11, 12).

The answers of both defendants admitted the contracts and the obtaining of releases, but denied the fraud and the amount in controversy (Tr. I, pp. 3–9).

The facts disclose that after some discussion about plaintiff's claim between the two companies, claims agents for each company visited plaintiff (Tr. II, pp. 73, 74, 76, 77, 80). Each of these claims agents told plaintiff the same story—that his condition was neither sickness nor accident and was not within the policy coverage, but, to help him out, each would pay a small sum ($150 and $250, respectively) for a release. He took the money and signed the releases, which released future as well as past benefits. Nothing was said about future disability (Tr. II, pp. 12–21, 78, Ex. 10, 14).

The defendants admitted that the claims agents were acting within the course and scope of their employment and were not menial employees and, at the time they obtained the releases, knew plaintiff's condition was a sickness within the coverage of their policies (Tr. I, p. 27, Tr. II, pp. 72, 74, 76, 77).

■ Here the judge dismissed because in his opinion it appeared from the proof that the plaintiff was not entitled to recover the jurisdictional amount. In such a case, where the complaint asserts a claim in the jurisdictional amount, the action should not be dismissed unless the proof not only shows that the plaintiff cannot recover that amount, but also shows this with such certainty as to indicate a lack of good faith on the part of the plaintiff in bringing the action in the federal court. St. Paul Mercury Indemnity Co. v. Red Cab Co. (1938) 303 U.S. 283, 289, 58 S.Ct. 586, 82 L.Ed. 845; McDonald v. Patton, 4th Cir., 240 F.2d 424, 426; Matthiesen v. Northwestern Mutual Insurance Company, 5 Cir. 1961, 286 F.2d 775.

■■ Appellees urge that the claim made by plaintiff for exemplary or punitive damages cannot be made in good faith. If made in good faith, punitive damages may be included in computing the amount necessary for federal jurisdiction. Young v. Main, 8 Cir. 1934, 72 F.2d 646. However, if under the applicable state law it would be *legally impossible* to recover actual *and* exemplary damages, the addition of such exemplary damages to the claim will not create a sufficient good faith claim.

■ In a diversity case, we are required to follow the state law of Oregon. Erie R. Co. v. Tompkins (1938) 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188.

■ Defendants say the law of Oregon prevents recovery of exemplary or punitive damages for fraud except where the fraud is aggravated, "as where it is gross, malicious, or wanton," (Cays v. McDaniel, et al., (1955) 204 Or. 449 at 457–458, 283 P.2d 658, 661–662) and citing in support of that theory Perez v. Central Nat'l Ins. Co. of Omaha, (1958) 215 Or. 107, 372 P.2d 1066; Ridgeway v. McGuire, (1945) 176 Or. 428, 158 P.2d 893. We do not find them based on a factual situation similar to the peculiar ones here alleged to exist.

We accept defendant's position as correctly stating the law of Oregon. It was expressed somewhat more broadly in Fisher v. Carlin, 219 Or. 159 at 162, 346 P.2d 641, 643 (a later case, 1959), where Chief Justice McAllister said:

"To justify punitive damages, the jury must be satisfied that the injury was done maliciously or willfully and wantonly or committed with bad motive or recklessly so as to imply a disregard of social obligations."

Appellant relies largely on Equitable Life & Cas. Ins. Co. v. Lee, 9 Cir. 1962, 310 F.2d 262, but again, we do not find the factual situation in that case similar to this. No question of menial employment, without power to represent the corporations, is raised.

This is not a suit on the policies. This is a claim for fraud and deceit—that "defendants by their agents and employees falsely represented to plaintiff that his condition was neither accident nor sickness and would not come within either policy" (amended complaint, par. II); that said statements "were false, were known to be false when made, were [meant] to defraud plaintiff of his rights

under the aforesaid policies." (Amended complaint, par. III)

Plaintiff asserts that under Oregon Law fraud (a) may be "innocent" and support an action for rescission but not damages; (b) may be negligent or intentional, which would support an action for damages; or (c) may be "gross fraud," or "fraud with malice," which will support an action for damages, both compensatory and exemplary.

In support of his position that he has a factual question present whether exemplary damages are properly available under Oregon law, appellant refers us (a) to Exhibit 12, which indicated Dr. Johnson's opinion was that plaintiff's condition arose from "sickness," not "injury," which opinion was known to defendants; (b) to Exhibit 15, a letter from one insurance company written after each had interviewed Dr. Johnson, telling appellant he "may have suffered an eye *injury*"; (c) to the following excerpts from the testimony produced:

"Q. At the time of your discussion obtaining the release from Mr. Davenport, did you have in your possession the report that is now in your hands, Exhibit 12?

"A. Yes, I did.

"Q. Did you at the time of discussing the matter, obtaining the release from Mr. Davenport, *know his condition, detached retina, came within your policy coverage as sickness?* [Emphasis supplied]

"A. Yes, I did.

"Q. What did you advise Mr. Davenport with regard to coverage under the policy?

"A. I advised him that there was no actual coverage under the illness provision or under the accident provisions of the policy * * * ."

(La France, Claims Representative for Mutual, Tr. II, pp. 76, 78.)

"Q. Did he (Landgraf—Continental) say anything about the coverage of the policy?

"A. The policy didn't cover me, under the conditions. It was neither sickness nor accident."

(Davenport, Tr. II, p. 18.)

"Q. Before taking Mr. Davenport's release, did you have a conversation with Dr. Johnson concerning Mr. Davenport's eye condition?

"A. Yes, I did.

"Q. You heard Dr. Johnson's testimony yesterday as to what he told you?

"A. Yes, I did.

"Q. Was that correct?

"A. Essentially, yes, I would agree with that.

"Q. And that you had that information before you went to discuss the release with Mr. Davenport?

"A. Yes.

"Q. *Did you at that time know that that condition was sickness under the coverage of your policy?*

"A. Yes. [Emphasis supplied]"

(Landgraf, Claims Manager for Continental, Tr. II, pp. 73–74.)

In interpreting the "gross fraud" essential for an award of punitive damages under the law of Alabama, the Supreme Court of Alabama said:

"[G]ross fraud * * * [is] defined * * * as 'representations made with a knowledge of their falseness (or so recklessly made as to amount to the same thing), and with the purpose of injuring the plaintiff.'" Southern Building & Loan Ass'n v. Dinsmore (1932), 225 Ala. 550, 552, 144 So. 21, 23.

In interpreting plaintiff's rights under such law, the Supreme Court of the United States said it was unnecessary to use the term "gross" to describe the fraud; nor need the "punitive and actual damages * * * bear a definite math-

ematical relationship [to each other]." Considering the nature of the Alabama suit,[1] and "these general principles of Alabama law, we are unable to say that under petitioner's complaint evidence could not be introduced at a trial justifying a jury verdict for actual and punitive damages exceeding" the jurisdictional minimum. Bell v. Preferred Life Soc., (1943) 320 U.S. 238, 241–243, 64 S.Ct. 5, 6–7, 88 L.Ed. 15.

 We come to the same conclusion as to the instant action. We cannot say it is apparent "to a legal certainty" that appellant could not recover an amount in excess of the jurisdictional amount, if he can prove his case of "gross fraud."[2]

 Because plaintiff has not claimed malice or gross fraud in so many words is of no consequence, for "a complaint filed in the federal court should not be dismissed for want of jurisdiction because of a mere technical defect such as would make it subject to a special motion to clarify." Bell v. Preferred Life Soc., (1943) 320 U.S. 238 at 242, 64 S.Ct. 5 at 7, 88 L.Ed. 15.

This court has recently used the precise language cited above (Fisher v. Carlin, supra) in a case involving Oregon law with respect to punitive damages, that

> "where there is evidence that the injury was done maliciously or wilfully and wantonly or committed with bad motive or recklessly so as to imply a disregard of social obligations, punitive damages are justified." Reynolds Metals Co. v.

1. The plaintiff alleged fraudulent misrepresentations by defendants' representatives as to the actual value of an insurance policy, where its maximum potential value was only $1,000. Punitive damages were prayed for and were required to establish jurisdiction, inasmuch as any recovery under the policy would be below the jurisdictional amount required for diversity jurisdiction.

2. In Fisher v. Carlin, supra, $250 actual damages and $2,750 punitive damages were upheld, citing Kingsley v. United

Lampert, 9 Cir. 1963, 316 F.2d 272, 275.

The judgment of dismissal is reversed, and the action remanded for trial. We express no opinion, of course, as to whether plaintiff can or cannot establish the truth of his allegations as to fraud to the ultimate satisfaction of the trier of facts, but he should have the opportunity to try to establish the merits of his action.

Rys. Co., 66 Or. 50, 58, 133 P.2d 785; Perry v. Thomas, 197 Or. 374, 393, 253 P. 2d 299; Genova v. Johnson, 213 Or. 47, 321 P.2d 1050. Fisher held specifically that where there exists substantial evidence that the injury falls into the class of gross negligence, "the issue was for the jury." And generally, see Martin v. Cambas, 134 Or. 257, 293 P. 601 (1930), a false arrest case; Pelton v. General Motors Acc. Corp., 139 Or. 198, 7 P.2d 263, 9 P.2d 128 (1932), an unlawful possession of auto case. Cf. also 165 A.L.R. 614.